DANTE C. SPINA, SR. and
LYNDAJEAN K. SPINA,                1:20-cv-14129-NLH-KMW

          Plaintiffs,

     v.                            **OPINION**

METROPOLITAL LIFE INSURANCE
COMPANY,

          Defendant.

<u>**APPEARANCES**</u>

DAVID A. AVEDISSIAN
135 KINGS HIGHWAY EAST
HADDONFIELD, NJ 08033

RICHARD F. KLINEBURGER , III
38 HADDON AVENUE
SUITE 100
HADDONFIELD, NJ 08033-2463

     *On behalf of Plaintiffs*

SANDRA JONES
NICOLE CARROLL WIXTED
FAEGRE DRINKER BIDDLE & REATH LLP
ONE LOGAN SQUARE, SUITE 2000
PHILADELPHIA, PA 19103

     *On behalf of Defendants*

<u>**HILLMAN**</u>, **District Judge**

     This matter comes before the Court by way of Defendant

Metropolitan Life Insurance Company's (Metlife) motion to

dismiss Plaintiffs Dante C. Spina, Sr. and Lyndajean K. Spina's

Amended Complaint. For the reasons expressed below, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

On August 30, 2007, Defendant issued a long-term care insurance policy to Plaintiff Dante Spina. The policy provides that Plaintiff would be eligible for long-term care benefits if he were to become "Chronically Ill," which is defined under the Policy as "unable to perform, without Substantial Assistance, from another individual, at least two (2) Activities of Daily Living ('ADL') for an expected period of at least ninety (90) days due to loss of functional capacity; or You require Substantial Supervision to protect You from threats to health and safety due to Severe Cognitive Impairment." (ECF No. 10-3, Ex. A at 6, 9). The Policy lists and defines six specific ADLs: Bathing, Dressing, Transferring, Toileting, Continence, and Eating.

On March 10, 2014, Plaintiff was admitted to the hospital with a series of medical issues; after being discharged on April 8, he was readmitted the following day, and diagnosed with a long list of medical conditions. Over the course of the next few months, Dante spent his time between a nursing home and rehabilitation facility and a hospital, to which was readmitted three times. Finally, on June 2, 2014, he was released from the nursing home.

Prior to his release, the Spinas had filed a notice of claim with Metlife on May 24, 2014, seeking benefits dating back to his initial hospital stay on March 10 and extending into the future.  Plaintiffs allege that, during that time frame and through the next several months after his return home, Dante was unable to perform at least two ADLs without substantial assistance from another individual, and was therefore eligible for benefits.  At some point after the filing of the notice of claim, Defendant began investigating Plaintiffs' claim. Plaintiffs allege that, on August 14, 2014, an investigator working for Metlife observed Dante sitting on a tractor, and that Defendant had further observed that during this period he had continued to perform his duties as an elected local official.

Although Plaintiffs did not receive any notice from Defendant that their benefits claim was being investigated, on December 15, 2014, Defendant filed a report accusing Plaintiffs of insurance fraud with either a state agency or the Salem County Prosecutors Office, and at some other point informed Plaintiffs their claim had been denied.  On May 22, 2014, "Plaintiffs were summoned by the Mid-Salem County Police Department and were both charged with a violation of N.J.S.A.2C:21-4.6A, Insurance Fraud-False Claim and N.J.S.A.2C:5-2A(1), Conspiracy."  (ECF No. 6 at ¶ 26).  Then, on

October 28, 2015, the Salem County Prosecutor's Office presented a grand jury with a bill of indictment against Plaintiffs; the jury no-billed the charges that same day.

Finally, on August 5, 2020, Plaintiffs filed their initial complaint in state court. (ECF No. 1-2). That complaint was removed to this Court by Defendant on October 8, 2020, (ECF No. 1), and Defendants quickly filed their first motion to dismiss on October 15. (ECF No. 3). Plaintiffs, rather than oppose that motion, chose to file an Amended Complaint on November 2, (ECF No. 6), within the 21-day time period for filing such an amended pleading as of right under Federal Rule of Civil Procedure 15(a)(1)(B). The Amended Complaint alleges claims for bad faith (Count I), violations of the New Jersey Consumer Fraud Act (NJCFA) (Count II), and breach of contract (Count III).

Defendant then followed with its second motion to dismiss, (ECF No. 10), which seeks dismissal of all claims for essentially the same reasons as its initial motion. Plaintiffs filed an opposition to the motion on December 7, 2020, (ECF No. 11), and Defendant filed a reply brief in further support on December 14. (ECF No. 12). The motions are therefore fully briefed and ripe for adjudication.

**DISCUSSION**

## I.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

## II.  Legal Standard for Motions to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

5

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

## III. **Analysis**

The Court first must address the fact that there are currently two outstanding motions to dismiss in this action, aimed at two separate versions of the complaint. As explained above, Plaintiffs filed the Amended Complaint within the 21-day period permitted for amending pleadings as of right under Rule 15(a)(1)(b); however, they also filed a brief opposing the initial motion to dismiss, which Defendant replied to. However,

from the Court's review of the two motions and the two
complaints, it is clear that insofar as Plaintiff still pursues
any of the claims from its initial complaint, Defendants'
arguments for dismissal are almost identical.  The Court will
therefore deny Defendant's first motion to dismiss (ECF No. 3)
as moot, will proceed with the Amended Complaint as the only
operable complaint in this action, and will address the
arguments for dismissal of those claims put forth by Defendant's
second motion to dismiss.

## 1. **Plaintiff Lyndajean Spina's Claims**

Before turning to the more substantive arguments put forth
by Defendant in its second motion to dismiss, the Court must
determine the extent to which Plaintiff Lyndajean Spina can
state any claims related to the Policy.  Defendant argues that
"Mrs. Spina was not a party to the Policy with MetLife . . .
Therefore, any claims asserted by Mrs. Spina that are tied to or
based on the Policy are improper and must be dismissed."  (ECF
No. 10-1 at 1, n.1).  After closely reviewing the Amended
Complaint as well as the parties' exhibits, the Court agrees.

The Amended Complaint asserts each of its claims for both
Plaintiffs.  Those claims include not only breach of contract,
but also bad faith and an NJCFA violation related to Defendant's
denial of the benefits claim.  And, as Defendant points out, the
Amended Complaint itself confusingly attaches an insurance

policy for Lyndajean Spina, despite the fact that the benefits claim underlying this action was alleged to have been made on behalf of Dante Spina.  The Court, having reviewed the copy of the Policy issued to Dante that was submitted by Defendant as an exhibit — the accuracy of which Plaintiff has not disputed, and which necessarily must be the focal document of this case, since it was Dante Spina's benefits claim which is being litigated — finds no basis for any assertion that Lyndajean is also a party to the Policy.  Nor, for that matter, does Plaintiffs' opposition brief appear to address this argument or attempt to demonstrate that Lyndajean was a party to the specific policy under which the benefits claims was made.

As Lyndajean Spina was not a party to the Policy, she cannot assert claims related to the breach of that contract, denial of benefits under that contract, or the breach of any implied duty associated with that contract.  See Kamden-Ouaffo v. Task Mgm't Inc., No. 1:17-cv-7506, 2018 WL 3360762, at *19 (D.N.J. July 9, 2018).  Therefore, while the Court will further address her claims focused on Defendant's actions in reporting her for insurance fraud in its analysis below, Plaintiff Lyndajean Spina's claims related to the Policy itself and Defendant's denial of Dante Spina's benefits claim will be dismissed with prejudice.

2. **Statute of Limitations Argument**

The Court next turns to the parties' broader arguments regarding Plaintiff's claims. Defendant first argues that each of Plaintiffs' claims must be dismissed because they are barred by the relevant statute of limitations imposed by the terms of the Policy. New Jersey law requires that claims arising out of a contract must be brought within six years of the cause of action having accrued. N.J.S.A. § 2A:14-1. "In New Jersey, the general rule is that the statute of limitations applicable to contracts also governs insurance actions as well." Gahnney v. State Farm Ins. Co., 56 F. Supp. 2d 491, 495 (D.N.J. 1999). However, under New Jersey law "the parties to a contract may shorten the limitations period, and cannot then avail themselves of a longer limitations period." Biegalski v. Am. Bankers Ins. Co., No. 14-6197, 2016 WL 1718101, at *4 (D.N.J April 29, 2016) (citing Gahnney, F. Supp. 2d at 495).

Here, Defendant points to two provisions of the Policy in arguing that Plaintiffs' claims must have been brought by June 8, 2020. First, the Policy provides that "[n]o legal action . . . may be brought after six (6) years from the time written proof of claim is required to be given." (ECF No. 10-3, Ex. A at 23). Second, the Policy's "Proof of Claim" provision requires that the policyholder "must submit written proof of claim no later than ninety (90) days after the day You are

requesting Benefits." Id. at 20. Defendants argue that this imposes a straightforward deadline by which Plaintiffs were required to bring their claims: six years and 90 days after the date Plaintiffs claim Dante Spina became eligible for benefits. Since Plaintiffs acknowledge that they claimed Dante Spina was entitled to benefits beginning on March 10, 2014, Defendants argue that they had until June 8, 2014 to submit proof of the claim and to June 8, 2020 file this action, and therefore their original complaint filed on August 5, 2020 was time-barred.

Plaintiffs, unsurprisingly, interpret the Policy's language differently. They put forth two separate arguments in their opposition brief. First, Plaintiffs argue that the deadline for filing their written proof of claim is actually provided by a separate sentence from the Proof of Claim provision, which states:

> "For periodic payment for a continuing claim, You must submit written proof of claim to Us, at the address stated on the claim form We provide You, no later than ninety (90) days after the end of each period for which We are liable, or no later than ninety (90) days after the end of the calendar year in which You incurred charges, whichever is later." (ECF No. 10-3, Ex. A at 20).

However, as Defendant points out, Plaintiffs have not alleged here that they were seeking "periodic payment for a *continuing claim*" — instead, even interpreting the allegations in the Amended Complaint in the light most favorable to

Plaintiffs, it is clear that they have alleged that they were submitting an entirely new benefits claim unrelated to any prior continuing claims or periodic payments. Accordingly, under the straightforward terms of the contract, their benefits claim was seeking "payment of any other claim," and the deadline for their written proof of claim was therefore governed by the language cited by Defendant instead.

Second, according to Plaintiffs, the 90-day period for filing the written proof of claim did not start until the end of the period for which they claimed Dante Spina was eligible for benefits, placing in issue the time period for which they made their claim. By Plaintiffs' reading, the provision requires them to file a written proof of claim only within 90 days of the last day for which they are claiming benefits — granting them a potentially substantially longer time within which to have submitted a proof of claim. Since they claimed benefits through at least June 2014, their complaint filed on August 5, 2020 would therefore be timely.

Before diving into contractual interpretation, the Court will first briefly address a secondary argument put forth by Plaintiffs. Beyond their arguments above, Plaintiffs also contend that even were the Court to adopt Defendant's interpretation of the Proof of Claim provision, the applicable limitations period would still be the New Jersey statutory

period quoted above, under which their claims would be timely. Plaintiffs point the Court to a separate provision of the Policy, which states that "Any provision in this policy which, on the Original Coverage Effective Date of the policy, conflicts with the laws of the state in which You reside on that date, is amended to meet the minimum requirements of such laws." Id. at 23. According to them, since Defendant's interpretation would shorten the limitations period for their claim, it therefore conflicts with New Jersey law and must be amended.

However, the Third Circuit has previously addressed an extremely similar provision in an insurance claim dispute. In Koert v. GE Group Life Assur. Co., 231 F. App'x. 117 (3d Cir. 2007), the plaintiff made this exact argument, asserting that her policy's shorter limitations period conflicted with a Pennsylvania statutory limitations period. Id. at 120. The Third Circuit quickly dismissed of her argument:

> "[Plaintiff] directs us to language in the policy which specifies that '[t]he time limits for ... filing legal action will be changed to comply with the minimum requirements of any applicable law.' Were Pennsylvania's statutory limitation period a 'minimum requirement' beneath which parties could not contract, then Koert would be correct that the applicable limitation period would be four years. It is not. Pennsylvania law allows parties to contract for limitation periods shorter than those specified by statute, and a three year period is certainly reasonable. Therefore, the statutory period is not a minimum requirement, and the policy's shorter limitation period is applicable." Id. at 120.

While the Third Circuit there addressed Pennsylvania law, New Jersey law similarly allows parties to contract for limitations periods shorter than those specified by statute.  See Klimowicz v. Unum Life Ins. Co. of America, 296 F. App'x. 248, 250 (3d Cir. 2008) (citing Hosp. Support Servs., Ltd. v. Kemper Group, Inc., 889 F.2d 1311, 1314 (3d Cir. 1989)).  Accordingly, the Court finds that the New Jersey statutory limitations period is not a minimum requirement, and the Policy's limitations period is applicable here regardless of which interpretation is adopted.

The Court therefore turns to the parties' arguments regarding the specific language in question from the Proof of Claim provision.  Both parties appear to agree that New Jersey law applies here.  Under New Jersey law, the interpretation of an insurance policy is a "question of law."  Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 46 A.3d 1272, 1276 (N.J. 2012).  And importantly, New Jersey courts have emphasized that the language of an insurance policy "should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mutual Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992).

The Court, having reviewed the parties' proposed interpretations and the Policy itself in great detail, finds that both parties have overlooked the plain and ordinary meaning

14

of the provision in question.  The Policy states that the policyholder must submit a written proof of claim "no later than ninety (90) days after the day You are requesting Benefits," and the Court interprets the provision to mean exactly what it says: that the Spinas were required to submit a written proof of claim within ninety days of the day they submitted their request for benefits.  As Plaintiffs allege that they submitted the benefits claim on May 24, 2014, they therefore had until August 22, 2014 to submit a written proof of claim, and until August 22, 2020 to bring their claims without being time-barred.  Accordingly, Plaintiffs' claims are timely under the language of the Policy.

While the Court does not disregard the interpretations proposed by the parties lightly, it finds that this reading flows most directly from the common and ordinary meaning of the provision's language.  This finding is only further strengthened by the respective weaknesses with both parties' alternative interpretations.  First, Defendant's preferred interpretation stretches the common, ordinary meaning of the provision's language; Defendant is requesting that the Court effectively alter the wording of the provision, reading it to state not that a written proof of claim must be submitted "no later than ninety (90) days after the day You are requesting Benefits," but rather than it must be submitted "no later than ninety (90) days after the day *for which* You are requesting Benefits."  However, where

the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written" — and may not re-write the policy so as to favor either party.  Delaware Valley Plumbing Supply, Inc. v. Merchants Mutual Insurance Co., No. 1:20-cv-08257-NLH-KMW, 2021 WL 567994, at *3 (D.N.J. Feb. 16, 2021) (quoting Royal Ins. Co. v. Rutgers Cas. Ins. Co., 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)).

Further, the specific facts of this case help demonstrate why Defendant's attempt to tie the limitations period to the start date of the benefits period claimed by Plaintiffs stretches beyond a clear reading of the Policy.  Defendant argues that March 10, 2014, the date which Plaintiffs claimed was the beginning of the period for which they were eligible for benefits, is the date on which the 90-day period must start running.  And while there are certain exceptions, the Policy expressly provides that "[f]ailure to submit proof of claim within this time limit will result in a claim denial . . ." (ECF No. 10-3, Ex. A at 20).  Accordingly, taking Defendant's interpretation to its logical conclusion, a policyholder would be required to not only have submitted a benefits claim, but also the written proof of claim, within 90 days of the start of any benefits period or risk their claim being denied as untimely — even if that period extended beyond 90 days.

This interpretation would transform a provision presumably designed to create a simple deadline for submitting a proof of claim into a deadline for when a party may make a benefits claim altogether for a past period of eligibility. However, the Policy already contains an entirely separate provision governing the deadline for making a claim, which states that policyholders "must provide [Metlife] with notice of claim within twenty (20) days after the beginning of any loss covered by the policy, or as soon as reasonably possible." Id. Defendants not only ask the Court to read into the Proof of Claim provision additional language that changes its meaning; they ask the Court to read the provision to institute a second deadline for providing notice of a claim, above and beyond the deadline and standard put forth by the Policy's provision that explicitly covers that question. Given the more straightforward interpretation of the provision outlined above, which does not require the Court to read in additional language or to encroach on the terms of the Notice of Claim provision, the Court will decline to adopt Defendant's preferred reading.[1]

---

[1] While Defendant points the Court to two cases dealing with contractual limitations periods based on the date a proof of claim was required to be submitted, Weinberger v. BAE Systems of North America, No. 9-1767, 2009 WL 10690592 (D.N.J. July 27, 2009) and Smith v. Metropolitan Life Ins. Co., No. 14-2288, 2015 WL 5177633 (D. N.J. Sept. 3, 2015), the Court notes that the proof of claim deadlines in those cases were not directly comparable to the provision here.

So too does Plaintiffs' interpretation stretch the plain meaning of the Policy's language.  According to Plaintiffs, the statute of limitations cannot possibly start running until the end of the period for which they claim benefits, regardless of when they made the claim or when the claim was denied.  But while Plaintiffs disagree on which specific day of the claimed benefits period the clock begins ticking, their interpretation essentially relies on the Court to re-write the Proof of Claim provision in the exact same way as Defendant's interpretation, which the Court will not do.  And Plaintiffs' own attempt to illustrate the application of their interpretation shows that it can quickly devolve into a somewhat detailed analysis of the relationship between the exact days the party decides to claim benefits for, the later date on which they actually make the claim, and exactly where the 90-day period for submitting the written proof of claim overlaps with those dates.

Such an interpretation overcomplicates the question of when the statute of limitations starts running and when a policyholder's claims become time-barred, a question which the Court presumes the parties drafting the contract intended to answer in as clear and straightforward a fashion as possible for the benefits of all parties.  Rather than interpreting the Policy's language in a manner which would run the risk of only engendering more potential confusion for parties attempting to

accurately assess the date by which they must bring potential claims, the Court adopts the clear and ordinary meaning of the terms drafted. As Plaintiffs filed their claims prior to August 22, 2020, their claims were timely.

### 3. **Failure to State a Claim**

Defendant next argues that Plaintiffs' claims must be dismissed for failure to adequately state a claim. Plaintiffs assert three separate types of claim: breach of contract, bad faith, and violation of the NJCFA.

The Court will first address a point of apparent confusion: Plaintiffs repeated assertion in their opposition brief that their claims are sufficient because "New Jersey is a notice pleading state." (ECF No. 11 at 26). Regardless of the pleadings standards applied in New Jersey state courts, the federal courts do not apply state pleading standards, and instead apply the pleading requirements outlined by the Court above in its discussion of the legal standard for motions to dismiss under Rule 12(b)(6). The Court will analyze the sufficiency of Plaintiffs' claims under that standard.

### A. **Breach of Contract**

The Court turns first to Plaintiffs' breach of contract claim. Under New Jersey law, to state a claim for breach of contract, a plaintiff must plead that (1) the parties entered into a valid contract; (2) the defendant failed to perform its

contractual obligation; and (3) as a result, the plaintiff
sustained damages.  Sheet Metal Workers Int'l Ass'n Local Union
No. 27, AFL–CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d
Cir. 2013) (citing Coyle v. Englander's, 488 A.2d 1083 (N.J.
Super. Ct. App. Div. 1985)).  Plaintiffs' general claim is
conceptually straightforward: they had a contract under which
Defendant agreed to provide long-term care benefits if Dante
Spina became chronically ill, and Defendant improperly denied
their claim for benefits.

Defendant argues that Plaintiffs have failed to put forth
sufficient factual allegations in their Amended Complaint to
move past the pleadings stage.  Defendant first argues that
Plaintiffs claims must be dismissed because they "fail to allege
what part of the Policy, if any, MetLife breached by denying Mr.
Spina's claim."  (ECF No. 10-1 at 13).  They further go on to
state that "Plaintiffs cannot identify an applicable part of the
Policy that MetLife purportedly breached by denying Mr. Spina's
claim. Rather, Plaintiffs merely regurgitate Policy language,
which does nothing to satisfy the elements required by law to
properly assert a claim."  Id.  However, even a cursory review
of the Amended Complaint makes clear that Defendant is arguing
semantics; while the Amended Complaint may not cite to the
specific sub-provision of the Policy Plaintiffs claim was
breached, it does directly outline the relevant requirements for

receiving long-term care benefits under the Policy, and alleges that despite the fact that Dante Spina qualified under these requirements Defendant denied the claim. (ECF No. 6 at ¶¶ 10-12). Defendant has cited no case law at all in arguing that these allegations are insufficient simply because they do not include a direct citation to a specific provision, and the Court declines to make such a holding when the basis for Plaintiffs' breach claim is as clear and straightforward as it is here.

Defendant's second, and central, argument is that Plaintiffs have simply failed to include sufficient factual allegations that Dante Spina was in fact eligible for benefits. While, as explained above, Plaintiffs have relied on the wrong pleading standard in defending the sufficiency of their claims, the Court notes that Defendant has similarly failed to cite any case law at all, beyond basic citations for pleading standards, to support its argument that the actual allegations here are insufficient. Instead, Defendant simply asserts that they are, and expects the Court to agree. However, Defendant appears to largely overstate the Plaintiffs' burden to adequately state a claim, and the Court finds that Plaintiffs' claims, while not filled with extensive levels of detail, are sufficient to avoid dismissal at the pleadings stage.

As mentioned above, Plaintiff's theory for their breach of contract claim is simple: Dante Spina was eligible for benefits

under the Policy, and Defendant denied his benefits claim anyway. There is no dispute presented by the parties as to whether Defendant denied the benefits claim or whether this denial caused Plaintiffs to suffer damages, and therefore the only true question is whether the Amended Complaint adequately alleges that Dante Spina was eligible for benefits in the first place. Under the Policy, Spina was required to demonstrate that he was "Chronically Ill," which is defined as "unable to perform, without Substantial Assistance, from another individual, at least two (2) Activities of Daily Living('ADL') for an expected period of at least ninety (90) days due to loss of functional capacity; or You require Substantial Supervision to protect You from threats to health and safety due to Severe Cognitive Impairment." (ECF No. 10-3, Ex. A at 6, 9).

Plaintiffs' Amended Complaint explicitly outlines this requirement. (ECF No. 6 at ¶ 10). It further alleges that even months after discharge from the nursing home, he was still struggling to walk with a cane, and provides an extremely detailed list of the medical conditions Dante Spina suffered from and was diagnosed with at the time:

> "He was diagnosed with being in respiratory failure secondary to hypercarbia, septic shock, adrenal insufficiency, congestive heart failure, anemia, atrial fibrillation, a bleeding duodenal ulcer, acalculous cholecystitis orthostatic hypertension, and acute kidney injury . . . The hospital records note mild acute diastolic heart failure and recurrent

atrial fibrillation along with the above referenced
diagnoses.  He was also diagnosed with degenerative
joint disease in the knee and sleep apnea."

(ECF No. 6 at ¶¶ 4-6).

Plaintiffs also allege that "Between March 10, 2014 and
June 2, 2014, Plaintiff was admitted to the hospital on three
separate occasions and was inpatient for approximately six
weeks.  The remaining time between March 10 and June 2, 2014 was
spent in a nursing home/rehabilitation facility," and that he
was still at the nursing home at the time he filed the claim.
Id. at ¶¶ 8-9.  Finally, most importantly, Plaintiffs directly
allege that Dante Spina was eligible for benefits "as a result
of his various ailments and medical conditions" as well as "his
continued inability to perform at least two ADLs defined under
the policy without substantial assistance from another person."
Id. at ¶ 20.

Ultimately, Defendant's argument for why Plaintiff has
failed to state a claim centers on the fact that they did not
specify the exact ADLs that Dante could not perform without
assistance; at one point, Defendant describes the allegation
above that he was unable to perform at least two ADLs under the
policy as a "legal conclusion" that "does not put MetLife on
notice for the basis of Plaintiffs' claims."  The Court
disagrees on both fronts.  First, that allegation is clearly not
a legal conclusion; the question of whether Dante Spina was

unable to perform at least two ADLs without substantial assistance is a question of fact, which will ultimately play a substantial role in determining whether a breach occurred, not a legal question in and of itself. Second, the Court is unconvinced that Defendant is not on notice of the basis of Plaintiffs' claims. Plaintiffs have made abundantly clear that they believe they can prove Dante Spina could not perform at least two of the six ADLs listed and defined in the Policy on his own; Metlife therefore should have little difficulty in determining what they are defending against, or even what factual disputes will be central at the summary judgment or trial stages of this action.

Viewing the allegations in the light most favorable to Plaintiffs, as the Court must on a motion to dismiss, the Court finds that Plaintiffs have sufficiently stated their claim. While they certainly could have strengthened their complaint had they included more detail, the allegations in their Amended Complaint are adequate to meet Plaintiffs' burden at the pleadings stage. The Court will deny Defendants' motion to dismiss as to the breach of contract claim.

### B. **Bad Faith**

Plaintiffs have also asserted a count for "bad faith," which the Court interprets as a claim for breach of the implied duty of good faith and fair dealing. Under New Jersey law, it

is well settled that every insurance contract includes an
implied duty of good faith and fair dealing. Wadeer v. N.J.
Mfrs. Ins. Co., 220 N.J. 591, 610 (2015); see Pickett v.
Lloyd's, 131 N.J. 457, 467 (1993). "An insured may pursue a
cause of action against an insurer for a bad faith denial of
benefits to which the insured is entitled under the insurance
policy . . . A claim for bad faith may be based on, for example,
an insurer failing to conduct a reasonable investigation or not
attempting to negotiate in good faith with the insured."
American Southern Home Insurance Company v. Unity Bank, No. 16-
3046 (FLW)(DEA), 2017 WL 1488128, at *3 (D.N.J. Apr. 25, 2017)
(internal citations omitted).

    To succeed on their bad faith claim, Plaintiffs are
required to demonstrate: (i) the absence of a reasonable basis
for denying the claim for coverage; and (ii) that the insurer
knew or recklessly disregarded its absence of a reasonable
basis. Pickett, 131 N.J. at 481. "Such bad faith claims are to
be analyzed in light of a 'fairly debatable' standard, which
posits that '[i]f a claim is 'fairly debatable,' no liability in
tort will arise.'" Nationwide Mut. Ins. Co. v. Caris, 170 F.
Supp. 3d 740, 748 (D.N.J. 2016) (quoting Pickett, 131 N.J. at
473). Simplified, this means that "if an insurance company's
reasons for denying coverage are 'fairly debatable,' then the
insurance company cannot be liable for bad faith." Nat'l Mfg.

<u>Co. v. Citizens Ins. Co. of Am.</u>, No. 13-314, 2016 WL 7491805
(D.N.J. Dec. 30, 2016).

Here, Plaintiff essentially appears to be putting forth two
separate bad faith claims: one related to the failure to pay
their benefits under the Policy, and another focused on
Defendant's actions in reporting them for alleged insurance
fraud.[2]  As to the first claim, the Court finds that Plaintiff
has pled sufficient facts at this stage.  As outlined above,
Plaintiff has directly alleged that Dante Spina was eligible for
benefits under the Policy.  The Amended Complaint goes further,
and alleges that Defendant denied his claim based "on having

---

[2] The Court notes that the Amended Complaint has also alleged bad
faith based on Defendant's alleged actions in violation of the
New Jersey Unfair Claims Settlement Practices Act, N.J.S.A. §
17:29B-4.  Plaintiffs' initial complaint included a stand-alone
claim for violation of this provision; after Defendant's initial
moving brief pointed out that there is no private right of
action under that statute, Plaintiffs' Amended Complaint
included it instead as an underlying basis for their bad faith
claim.  As the parties have not truly briefed this issue, and
the Court finds otherwise that Plaintiff has adequately stated a
claim for bad faith, the Court will not discuss this potential
basis for their claims besides to note that, as Defendant itself
pointed out in its brief supporting its initial motion to
dismiss, (ECF No. 3 at 15-16), the New Jersey Supreme Court has
referenced the state's codification of good faith practices for
insurers in § 17:29B-4 in a discussion of bad faith claims.  <u>See</u>
<u>Badiali v. New Jersey Mfrs. Ins. Grp.</u>, 107 A.3d 1281, 1287 (N.J.
2015).  And while Defendant may genuinely believe that it is
somehow "unfairly prejudiced" by Plaintiffs having amended their
complaint in response to Defendant's initial motion to dismiss,
(ECF No. 10-1 at 18, n.7), that is unequivocally what Plaintiffs
are permitted to do within the timeframe provided by Federal
Rule of Civil Procedure 15(a)(1)(B).

observed Plaintiff one time on a tractor on August 14, 2014 and his continued involvement as a local government elected official," which they claim is entirely inadequate to determine he was ineligible.  (ECF No. 6 at ¶ 18).  While the complaint acknowledges that the Salem County prosecutor's office ultimately chose to charge Plaintiffs' with insurance fraud, it also states that a grand jury did not return an indictment, and Defendant has provided no case law or support to demonstrate that a county prosecutor's failed prosecution is sufficient to overcome Plaintiffs' allegations at the pleadings stage.  Given the list of six separate ADLs defined in the Policy, the Court finds that if Plaintiffs allegations are true and Defendant denied their claim for benefits based upon nothing more substantial than the observations outlined above, Plaintiff very well may be able to demonstrate that Defendant did not have a "fairly debatable" reason for denying coverage.

Defendants further counter by arguing that they had medical evidence demonstrating that Plaintiff was in fact ineligible; however, as Plaintiffs note, those facts are not in the record at this stage, and this Court is required to assume the facts as alleged in the complaint are true for the purposes of a motion to dismiss.  At least one court in this district has previously stated that "a bad faith claim against the insurance company fails at the motion to dismiss stage if the claimant cannot

establish a right to summary judgment on the substantive claim." Merchants Mutual Insurance Company v. 215 14th Street, LLC, No. 19-9206 (ES) (SCM), 2020 WL 634149, at *3 (D.N.J. Feb. 10, 2020). However, that court relied only on a Third Circuit opinion which (1) assessed a bad faith claim at the summary judgment stage, (2) cited itself only to other cases assessing claims at the summary judgment stage, and (3) referred to the following test propounded by the New Jersey Supreme Court: "To establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails. In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." Ketzner v. John Hancock Mut. Life Ins. Co., 118 F. App'x. 594, 599 (3d Cir. 2004) (citing Pickett, 621 A.2d at 454).

The Court acknowledges that, in some cases, a question of law, rather than a factual dispute, may make clear at the pleadings stage that there was a fairly debatable, or even clearly correct, basis for denial of a claim. However, it appears clear that the Court simply cannot determine whether Plaintiffs here can establish a right to summary judgment on their breach of contract claim at the pleadings stage with no

developed factual record before it.  See Gallerstein v. Berkshire Life Ins. Co. of America, No. 05-05661 (JAG), 2006 WL 2594862, at *4 (D.N.J. Sept. 11, 2006) ("Application of the 'fairly debatable' standard requires an intensive factual examination.").  Accordingly, the Court will follow the lead of other courts in this district which have analyzed whether a plaintiff's claims, if true, would be sufficient to demonstrate the lack of a fairly debatable reason to deny coverage.  See American Southern Home Insurance Company v. Unity Bank, No. 16-3046 (FLW)(DEA), 2017 WL 1488128, at *3-4 (D.N.J. Apr. 25, 2017).

To the extent that Defendant believes it can put forward evidence to prove that it had a "fairly debatable" reason to deny the claim, such evidence will be considered at the summary judgment stage.  For now, the Court simply finds that, looking only to the factual allegations in Plaintiffs' complaint and assuming them to be true, Plaintiffs have sufficiently stated a claim for bad faith related to the denial of benefits.  The Court will therefore deny Defendant's motion to dismiss as to that claim.

As to Plaintiffs' second basis for their bad faith claim, the reporting of their alleged insurance fraud, Defendant argues that it is statutorily protected from civil liability.  Under the New Jersey Insurance Fraud Prevention Act, insurers have a

mandatory obligation to report potential instances of insurance fraud.  See N.J.S.A. § 17:33A-9(a)(1) ("Any person who believes that a violation of this act has been or is being made shall notify the bureau and the Office of the Insurance Fraud Prosecutor immediately after discovery of the alleged violation of this act and shall send to the bureau and office, on a form and in a manner jointly prescribed by the commissioner and the Insurance Fraud Prosecutor, the information requested and such additional information relative to the alleged violation as the bureau or office may require.").  The Act further provides protections from civil liability for insurers making such reports, stating that "[n]o person shall be subject to civil liability for libel, violation of privacy, or otherwise by virtue of the filing of reports or furnishing of other information, in good faith and without malice, required by this section . . ."  Id. at § 17:33A-9(b).

Defendant argues not only that they had a good faith belief based on the evidence, but also that the simple fact that charges were ultimately filed against Plaintiffs demonstrates that their report as made in good faith, and therefore they are statutorily protected.  However, Defendant has again failed to put forth any support for the proposition that a decision to file charges is sufficient to demonstrate that a report was made in good faith and without malice, and the Court's own research

has found almost no case law discussing the provision in question. The Court has already held above that Plaintiffs have sufficiently alleged that Defendant did not have a good faith basis to deny their benefits claim — which would presumably mean that they similarly did not have a good faith basis to report Plaintiffs for insurance fraud based on that claim. The Court again emphasizes that it reaches no conclusion and makes no holding as to whether these facts are true, and notes that it very well may be the case that, with a developed factual record, Defendant will be able to easily and quickly demonstrate that they acted in good faith and without malice in making the report. However, at this stage, the Court holds that Defendant has failed to demonstrate that based only on the allegations found in Plaintiffs' Amended Complaint, they are statutorily protected from civil liability for their report.

### C. New Jersey Consumer Fraud Act

Finally, Plaintiff has similarly alleged that Defendant has violated the New Jersey Consumer Fraud Act. To allege an NJCFA claim, a plaintiff must show "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Myska v. New Jersey Mfrs. Ins. Co., 114 A.3d 761, 776 (N.J. Super. Ct. App. Div. 2015).

Defendant argues first that Plaintiffs' NJCFA claim regarding the denial of benefits must be denied because the NJCFA does not cover such claims.  As Defendants correctly note, New Jersey state courts have made clear that "while the CFA 'encompass[es] the sale of insurance policies as goods and services that are marketed to consumers,' it was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits."  Id. at 777 (quoting Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 265 (1997)).  Plaintiffs entirely fail to refute, or even respond to, this argument, and their opposition brief's defense of their NJCFA claim consists of only two short sentences.  The Amended Complaint itself does reference a recent Third Circuit case, Alpizar-Fallas v. Favero, 908 F.3d 910 (3d Cir. 2018).  However, even a cursory review of that case shows that the Third Circuit, rather than disagreeing with the case law cited above, simply found that Myska was inapposite because Alpizar-Fallas did not allege that she had made an insurance claim nor had a claim denied.  Id. at 917-18.

From the Court's review of the Amended Complaint, it appears clear that with the exception of the NJCFA claim based on Metlife's insurance fraud report, the rest of Plaintiff's bases for claiming a violation of the NJCFA are directly related to their insurance claim and the subsequent denial of their benefits.  Accordingly, Defendant's motion to dismiss the NJCFA

32

claim based on the denial of the insurance claim will be granted, and Plaintiffs' claim will be denied with prejudice.

Plaintiffs' final claim, then, is that Defendant violated the NJCFA when it reported their alleged insurance fraud. Defendants argue both that they are protected from civil liability for such a claim, and that Plaintiffs have failed to state a claim. First, for the same reasons expressed above in the Court's analysis of Plaintiffs' similar bad faith claim, the statutory protection argument fails at this stage.

As to the second argument, the Court must take a close look at the specific allegations made by Plaintiff. As the Third Circuit's opinion in Alpizar-Fallas demonstrates, statutory fraud claims under the NJCFA must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Id. at 918-19. The heightened Rule 9(b) standard requires plaintiffs to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged'" and "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

The Court finds that Plaintiffs have met even this heightened burden. The Amended Complaint not only specifies the

date on which Defendant made the allegedly fraudulent report of insurance fraud, (ECF No. 6 at ¶ 25), it specifically alleges that Defendant made this report based simply "as a result of observing certain behaviors (plaintiff sitting on a tractor and going to a meeting) which would have in no way disqualified him from benefit entitlement under the subject policy," which Plaintiffs assert was "misguided, misleading, and in reckless disregard for [Defendant's] obligations under the policy . . ." Id. at Count II, ¶¶ 4-5.  Finally, the Amended Complaint claims that Defendant failed to share the inadequacy of their investigation when making their report.  Id. at ¶ 7(a). Plaintiffs have therefore pled both the date of the allegedly fraudulent report, and the specific, allegedly insufficient observations on which Defendant relied in making the report. The Court has little trouble finding that these allegations are sufficient to put Defendant on notice of the precise fraudulent misconduct with which it is charged.  Accordingly, Defendant's motion to dismiss will be denied as to Plaintiffs' NJCFA claim for Metlife reporting them for insurance fraud.

## **CONCLUSION**

For the reasons expressed above, Defendant's first motion to dismiss (ECF No. 3) will be denied as moot, and Defendant's second motion to dismiss (ECF No. 10) will be granted in part and denied in part.

An appropriate Order will be entered.


Date:  June 21, 2021               /s Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.